PEOPLE v HERNDON

Docket No. 27674. Submitted January 2, 1980, at Detroit.—Decided July 22, 1980.

Travis Herndon was convicted of assault with intent to commit armed robbery in Wayne Circuit Court, Joseph B. Sullivan, J., and sentenced to 15 to 30 years imprisonment. The defendant appeals alleging numerous errors. *Held:*

1. Michigan law expresses a strong preference for the use of line-ups and not photographic displays for identification purposes after a defendant is taken into custody. However, photographic displays are permissible when it is not possible to arrange a proper line-up.

2. A defendant has a right to appear in court without handcuffs. However, as a matter of practical necessity, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform. Absent a showing that such necessity was lacking or that prejudice resulted, the Court of Appeals will not reverse a defendant's conviction merely because the jury may have seen the defendant in handcuffs.

3. A defendant may not assign as error issues pertaining to improper material in his presentence report where that defendant does not make a record of error at the time of sentencing to enable the Court of Appeals to perform its function of review.

4. The lower court did not err in finding that the defendant

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 368, 369.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedure. 39 ALR3d 487.

Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedure. 39 ALR3d 1000.

[2] 21 Am Jur 2d, Criminal Law §§ 239, 240.

Propriety and prejudicial effect of gagging, shackling, or otherwise physically restraining accused during course of state criminal trial. 90 ALR3d 17.

[3] 5 Am Jur 2d, Appeal and Error § 648 *et seq.*

was not deprived of effective assistance of counsel by the failure of his attorney to raise and present an alibi defense at trial.

Affirmed.

1. CRIMINAL LAW — LINE-UPS — PHOTOGRAPHIC DISPLAY.

Michigan law expresses a strong preference for the use of line-ups and not photographic displays for identification purposes after a defendant is taken into custody; however, photographic displays are permissible when it is not possible to arrange a proper line-up.

2. CRIMINAL LAW — HANDCUFFS — DEFENDANTS.

A defendant has a right to appear in court without handcuffs; however, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform and, absent a showing that such necessity was lacking or that prejudice resulted, the Court of Appeals will not reverse a defendant's conviction merely because the jury may have seen the defendant in handcuffs.

3. CRIMINAL LAW — COURTS — DEFENDANTS — PRESENTENCE REPORTS — APPEAL.

A defendant may not assign as error issues pertaining to improper material in his presentence report where that defendant does not make a record of error at the time of sentencing to enable the Court of Appeals to perform its function of review.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Derrick A. Carter,* Assistant State Appellate Defender, for defendant on appeal.

Before: T. M. BURNS, P.J., and BASHARA and N. J. KAUFMAN, JJ.

T. M. BURNS, P.J. Defendant appeals of right his December 10, 1975, jury conviction of assault with intent to commit armed robbery. MCL 750.89; MSA 28.284. On December 18, 1975, defendant

was sentenced to a term of 15 to 30 years imprisonment.

The most significant issue raised in this appeal concerns whether the lower court erred when it permitted the complainant to make an in-court identification of defendant, where the complainant previously had identified defendant at a photographic display conducted at a time when he was in incarceration.

On September 1, 1975, the complainant was shot in the stomach by a man who was attempting to rob him. Nine days later, on September 10, police detectives gave the complainant a group of seven photographs and asked him whether he could identify his assailant. Defendant, who was in the custody of the police, was represented by a lawyer at the photographic display. Although the complainant was not positive in his identification, he stated that if the man depicted in the photograph of defendant had a small goatee, it would look like the man who assaulted him. The record does not disclose any objection to the photographic display by the attorney who represented defendant there.

At the subsequent preliminary examination the complainant was unable to identify defendant. Defense counsel objected to the complainant's in-court identification, alleging that it was tainted by the suggestiveness of the photographic display. Following a hearing held off the record, the lower court denied defense counsel's motion to exclude the identification testimony. The judge found that the photographic display had been conducted properly, had not been suggestive and did not taint the complainant's in-court identification. We agree.

Michigan law expresses a strong preference for the use of line-ups and not photographic displays for identification purposes after a defendant is

taken into custody. *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). However, not all photographic displays are impermissible. In *Anderson, id.,* 186, the Supreme Court recognized the necessity of using photographs for identification when, in a particular case, it was not possible to arrange a proper line-up. Inasmuch as the instant photographic display occurred in the presence of an attorney who was representing defendant, and at a time that the complainant was in the hospital recovering from a gunshot wound that he · had received in the assault, we agree with the lower court judge that the photographic display in this case was not per se impermissible.

However, our holding that the use of a photographic display was appropriate in this case does not end our consideration of this issue. We must also determine whether the display was unnecessarily suggestive because, as was held in *People v Adams,* 92 Mich App 619, 625; 285 NW2d 392 (1979), quoting *Simmons v United States,* 390 US 377, 384; 88 S Ct 967; 19 L Ed 2d 1247 (1968):

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was *so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."* See also, *People v Kachar, supra, People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).

After considering evidence presented at a separate hearing on defendant's motion to quash the complainant's in-court identification, the lower court ruled that the photographic display had not been impermissibly suggestive. We agree. The

facts of this case indicate that, prior to the photographic display, the attorney who was representing defendant was given a stack of 45 photographs by the police and told to choose any number of them for inclusion in the display. There is no evidence that that attorney objected to the display and, although the trial judge suggested that defendant call the attorney to obtain his testimony regarding the circumstances of the photographic display, defendant did not do so. As a consequence, there is no evidence in the record that would tend to establish that the otherwise proper photographic display was impermissibly suggestive. Inasmuch as we cannot say that the lower court abused its discretion when it held that the complainant's in-court identification of defendant was not tainted by an improper or biased photographic display, we hold that this issue does not present reversible error.

Defendant also complains that he was denied his right to a fair and impartial jury because during trial he was observed in handcuffs by members of the jury.

Except in unusual situations, a defendant has a right to appear in court without handcuffs. *People v Shaw,* 381 Mich 467; 164 NW2d 7 (1969). However, as a matter of practical necessity, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform. *People v Carroll,* 49 Mich App 44, 49; 211 NW2d 233 (1973), *aff'd* 396 Mich 408; 240 NW2d 722 (1976). Therefore, absent a showing that such necessity was lacking or that prejudice has resulted, this Court will not reverse a defendant's criminal conviction merely because the jury may have seen the defendant in handcuffs. *People v Anderson, supra,* 191, *adopting* 29

Mich App 578, 582-583; 185 NW2d 624 (1971), *People v Panko,* 34 Mich App 297; 191 NW2d 75 (1971), *lv den* 385 Mich 783 (1971).

Although evidence in the record indicates that defendant may have been in the presence of the jury while in handcuffs, there is no evidence that would indicate that any member of the jury ever saw handcuffs on defendant. Further, defense counsel did not request an evidentiary hearing to inquire as to whether members of the jury saw shackles on defendant and, if they did, whether they were thereby prejudiced. See, *People v Panko, supra.* In the absence of such an evidentiary record we are unable to hold that defendant was denied his right to a fair and impartial jury. We reject any contention that the trial judge had a duty to give any unrequested cautionary instruction to the jury regarding any encounter they may have had with defendant while he was in handcuffs. *People v Ernest Smith,* 87 Mich App 18; 273 NW2d 573 (1978).

We also reject defendant's argument that the lower court erred in finding that he was not deprived of effective assistance of counsel by the failure of his attorney to raise and present an alibi defense at trial. Following an evidentiary hearing on defendant's motion for a new trial, in which he raised this issue, the lower court judge concluded that this issue was without merit because defendant had not made a good faith effort to communicate to his counsel his desire to assert an alibi defense. Defendant's trial counsel testified at this hearing that despite his repeated requests to defendant to provide him with names of purported alibi witnesses, defendant never gave him any. Defense counsel also testified that defendant rejected his proposal to offer a police officer witness

who was alleged to have seen defendant on the day of the crime at his mother's home in support of the alibi defense. Further, the attorney stated that although he had talked with defendant's mother on a number of occasions, she was unable to inform him of the exact time that defendant was at her home. Upon review of the entire record we are not left with a firm conviction that the lower court abused its discretion when it held that defendant was not denied his right to effective representation because of his failure to adequately inform his counsel of the necessary information to investigate his alibi defense.

We are similarly unpersuaded by defendant's argument that he was unfairly prejudiced by certain allegedly improper comments by the prosecutor during closing argument to the jury. We find that the prosecutor's remarks were not impermissible but, rather, were merely comment on uncontradicted evidence presented at trial. Further, even assuming that the prosecutor's closing argument did contain improper content, defendant's failure to object to it or request a curative jury instruction has waived any error. *People v Duncan,* 402 Mich 1, 16-17; 260 NW2d 58 (1977), *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976).

Finally, we hold that defendant's failure to object at the time of his sentencing to purportedly improper information in his presentence report has resulted in a failure to preserve this issue for our review. Where a defendant does not make a record of error at the time of sentencing to enable this Court to perform its function of review, that defendant may not assign as error issues pertaining to improper material in the presentence report. *People v Sallee,* 63 Mich App 146; 234 NW2d 180 (1975).

Affirmed.